IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| NATALIE DELLINGER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 1:10cv25 (JCC) |
| SCIENCE APPLICATIONS ) | |
| INTERNATIONAL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This case is before the Court on a Motion to Dismiss filed by Defendant Science Applications International Corporation ("SAIC"). (Dkt. 3.) Plaintiff, Natalie Dellinger ("Dellinger" or "Plaintiff"), alleges that SAIC violated the anti-retaliation provision of the Fair Labor Standards Act ("FLSA") codified at 29 U.S.C. § 215(a)(3), by refusing to hire her after they received notice that she had filed a separate FLSA action against a former employer. On February 3, 2010 Defendant moved to dismiss on the basis that Plaintiff was never an "employee" of Defendant. Plaintiff opposed on February 22 and Defendant replied on February 26, 2010. For the reasons stated below, and in accordance with this Court's decision from the bench at the March 5, 2010 motion hearing, the Motion to Dismiss is granted.

1

## I. Background

The relevant factual allegations in the Complaint are as follows. Plaintiff has worked as an administrative assistant on various government contracts requiring security clearance, most recently in 2008 and part of 2009, when plaintiff was an employee of CACI. Inc. (Compl. ¶¶ 1-2.) In late July 2009, Plaintiff filed a claim against CACI, Inc. for violations of the minimum wage and overtime provisions of the FLSA. (Compl. ¶¶ 13-14.) At the same time, Plaintiff applied for a job with SAIC at the Sherman Kent School of the CIA for, at least in part, administrative support requiring an individual with security clearance. (Compl. ¶¶ 16-18.) After interviewing her for the position, SAIC offered Plaintiff the position of Administrative Assistant on or about August 21, 2009. (Compl. ¶¶ 20-22.)

This offer was contingent, however, upon Plaintiff's successful completion of a drug test, her submission of a "standard I-9 form," and, because the position plaintiff was offered required a security clearance, her offer was also contingent upon the successful verification, crossover, and maintenance of her security clearance including the completion and submission of a government document known as Standard Form 86 ("SF 86".) (Compl. ¶¶ 25-27.) The SF 86 is used for national security positions, and contains a variety of background questions includes, among other things, a request for

the applicant to list any non-criminal court actions to which the applicant has been or is currently a party. (Compl. ¶ 28.) As required, Ms. Dellinger listed on the SF 86 that she had filed a lawsuit in the U.S. District Court for the Eastern District of Virginia alleging FLSA violations against her former employer, CACI. (Compl. ¶ 29.)

Ms. Dellinger hand-delivered her signed employment offer letter, her SF 86, and other required documents to an SAIC employee named Brian Powers on August 24, 2009. (Compl. ¶ 32.) That same day, Ms. Dellinger took and passed the drug test required for employment with SAIC. (Compl. ¶ 33.) SAIC withdrew its offer of employment after August 24 (Compl. ¶ 34.) Two SAIC employees independently confirmed that SAIC had taken no action regarding her employment application after August 24, 2010. (Compl. ¶¶ 35-36.) The Complaint alleges that SAIC's failure to employ Ms. Dellinger was retaliatory action for her filing of her FLSA action against CACI.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court is first mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the

3

pleader is entitled to relief." Fed. R. Civ. P. 8. Thus, the Court takes "the material allegations of the complaint" as admitted and liberally construes the Complaint in favor of Plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Courts will also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 2009 WL 5126224, *3 (4th Cir. 2009) (citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n. 26 (4th Cir.2 009); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1951-52 (2009). Indeed, the legal framework of the Complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965.

In its recent decision, *Ashcroft v. Iqbal*, 129 S.Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test. First, a court must identify and reject legal conclusions unsupported by factual allegations

4

because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations", a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51.

Satisfying this "context-specific" test does not require "detailed factual allegations." *Nemet Chevrolet, Ltd.*, 2009 WL 5126224 at *4 (citing *Iqbal* at 1949-50 (quotations omitted)). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.*

### III. Analysis

Plaintiff alleges a cause of action under the anti-retaliation provision of the FLSA, 29 U.S.C. § 215. Defendant argues that Plaintiff cannot state a plausible claim for relief as she is not, nor has she ever been an "employee" within the meaning of the Act. This Court agrees with Defendant and finds that Plaintiff has not alleged facts sufficient to show that she was an "employee" of SAIC within the meaning of 29 U.S.C. § 215(a)(3).

5

A.  Plain Meaning

"In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Ramey v. Director, office of Workers' Compensation Program*, 326 F.3d 474, 476 (4th Cir. 2003)(citing *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475 (1992)). The statute at issue here, 29 U.S.C. § 215 states, in pertinent part:

> (a)  [I]t shall be unlawful for any person. . .
> (3)  to discharge or in any other manner discriminate against *any employee* because such *employee* has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . .

29 U.S.C. § 215 (emphasis added). Congress chose to define "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1)[1]. For an individual to be "employed" by an "employer" they must be **"**suffer[ed] or permitt[ed] to work." 29 U.S.C. § 203(g). Here, Plaintiff was never "permitted" to work for SAIC, in fact, her main allegation is that the offer of employment was withdrawn. (See Compl. ¶ 34.)

The two district courts that have addressed this issue have found that a job applicant should not be considered an

---

[1] An "employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C.§ 203(d).

6

"employee" for purposes of the anti-retaliation provision of the FLSA. In *Harper v. San Luis Valley Regional Medical Center*, an applicant for a nursing position at defendant hospital was involved in an unrelated federal wage claim suit against several municipalities. *Harper,* 848 F.Supp. 911 (D. Colo. 1994). The hospital hired several allegedly less qualified individuals over plaintiff Harper and Harper filed suit alleging FLSA retaliation. In reaching its decision the Court specifically relied on the plain language of the statute, noting that "where a statute names parties who come within its provisions, other unnamed parties are excluded." *Id*. at 913-914 (D.Colo. 1994) (citing *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1035, *cert. denied,* 484 U.S. 986, (9th Cir. 1987); See *Contract Courier Services, Inc. v. Research and Special Programs Admin. of U.S. Depart. of Transp.,* 924 F.2d 112, 114 (7th Cir. 1991)(holding "statutory words mean nothing unless they distinguish one situation from another; line-drawing is the business of language"). The Court in *Harper* held that § 215(a)(3) "specifically identifies those individuals who come within its provisions i.e. employees. Therefore, other unnamed parties such as non-employee job applicants are excluded from its protection." *Harper*, 848 F.Supp. at 914*.*

In the similar case of *Glover v. City of North Charleston*, plaintiff was also the lead plaintiff in a separate

FLSA wage and hour suit against the North Charleston (Fire Dept.) District. *Glover,* 42 F. Supp. 243 (D.S.C. 1996). After Glover brought suit against the District, the District Fire Department was disbanded and the City of North Charleston Fire Department was formed; however, the City had discretion to determine which of the District Department's employees would be hired. *Id.* at 245. In his suit against the City, Glover alleged a violation of § 215(a)(3) claiming the City's decision not to hire Glover was retaliation for his earlier FLSA claims. In dismissing the case, the *Glover* court found that plaintiffs were job applicants and thus not yet "employees" within the meaning of the Act. *Id.* at 246.

In so doing, the Court drew a careful distinction between § 215's initial language holding that it "shall be unlawful for *any person*" to commit certain acts (§ 215(a)), and more limited language of the provision at issue here, protecting "*any employee*" from the person's misconduct (§ 215(a)(3)). *Id.* at 245-246 (emphasis added). The court found that the statute's application to "any person" did not bar suit against the "non-employer" City, however, the plain language of the statue restricting its protections to "any employee" did mean that a mere job "applicant" did not have standing to bring a § 215 action. *Id.* As the *Glover* court found, the first sentence of the statute applies to "any person," if "Congress wanted to

8

cover non-employees, it could have written § 215(a)(3) to prevent discrimination [or retaliation] against "any person" instead of "any employee." *Id*. at 246-247. Based on the plain language of the statute, the courts that have considered the issue have found that § 215(a)(3) does not cover job applicants.

Plaintiff attempts to distinguish these cases as outliers and non-binding on this Court. As decisions from other Districts they are clearly not binding precedent, however, their reasoning is, contrary to Plaintiff's argument, applicable here. Both opinions rest on the plain language of the statute and both were unwilling to read the term "employee" to mean an individual who was *never* employed the Defendant.

Defendant points to the leading Fourth case regarding the sufficiency of an anti-retaliation claim under FLSA, *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008.) In the Fourth Circuit, to assert a prima facie claim of retaliation under the FLSA a plaintiff must show: "that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (citing *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1394 (10th Cir.

9

1997)).  Similarly, Defendant argues that as the Fourth Circuit standard requires a "casual connection" between the "employee's activity" and the "employer's" action, Plaintiff has no standing to bring suit as she was never an "employee."  (Mem. in Supp. Mot. to Dismiss at 4.)  Without reading beyond the plain language of the statute, a job applicant cannot be considered an "employee."

    B.    <u>Alternative Arguments</u>

Plaintiff offers a number of arguments why this Court should expand the definition of "employee" to include job applicants.  While the Court believes that the plain language of the statute is clear, it will nevertheless address each of Plaintiff's arguments in turn.

First, Plaintiff argues that the FLSA taken as a whole indicates that "employee" should include job applicants.  In support of this argument, Plaintiff points to § 216(a) of the statute which makes it unlawful for "any person" to violate the terms of § 215 and provides that the remedies of both "employment" and "reinstatement" are available to aggrieved employees.  29 U.S.C. § 216.  As the Court in *Glover* found and Defendant argues here had Congress wanted to include non-employees such as job applicants, it could have used the "any person" language from § 216 rather than the "any employee" language it chose.  *Glover*, 942 F. Supp. at 246-247

Second, Plaintiff argues that this Court should look to Title VII of the Civil Rights Act for guidance regarding the ambiguity of the definition "employee." (Opp. at 5.) Title VII's definition of "employee" is identical to the FLSA. See 42 U.S.C. § 2000e; 29 U.S.C. § 203. In *Robinson v. Shell Oil*, the Supreme Court found that Title VII's definition of "employee" was ambiguous as to whether or not it covered individuals who were fired by their employers and thus were now former employees. 519 U.S. 337 (1997). Ultimately the Court determined that Title VII did protect the actions of "former employees" in part because "Title VII's definition of "employee" [ ] lacks any temporal qualifier and is consistent with either current or past employment." *Id.* at 342. The Court held that the word "employed" could mean, both "*is* employed" but also could just as easily be read to mean "*was* employed." *Id.* at 342.

This approach to interpreting FLSA has been used in the Fourth Circuit in *Darveau*, where the Court considered "Title VII's authoritative body" of case law in analyzing "comparable provisions of other federal statutes" including the FLSA. *Darveau*, 515 F.3d at 342. *Darveau* specifically finds that the definitions of "employee" in Title VII and FLSA are identical. *Id.* As Defendants argue and is discussed above, the Fourth Circuit notes that *Robinson*, found that "employee" included

11

former and current employees (those who "are employed" and those who "were employed"), but did not find it also included applicants who were never employees.

There are several relevant distinctions between the *Robinson* case and the case at bar. First, in *Robinson* the Court was trying to determine if an employee that was fired by an employer could bring a FLSA claim against that former employer for subsequent discriminatory action. *Id.* at 339. The Court found that "employed" could mean both "is" employed" or "was" employed, not that "employed" could mean "never" employed. See *Id.* at 342. Furthermore, the statute at issue in *Robinson*, already specifically prohibits refusing to hire a job applicant who has exercised her Title VII rights in prior employment, no such provision exists in the FLSA. See 42 U.S.C. § 2000e-3. Had Congress intended to similarly protect job applicants it could have incorporated similar language into the anti-retaliation provisions of the FLSA.

Third, Plaintiff argues that other statutes from the "same era" as the FLSA, such as the National Labor Relations Act ("NLRA"), should influence this Court's interpretation of the term "employee." Specifically, Plaintiff argues that it is similarly unlawful for an "employer" to retaliate against an "employee" in the NLRA and that "case law interpreting the NLRA" indicates that the refusal to hire an applicant for employment

is contrary to the NLRA. (Opp. at 11 (citing *NLRB v. Lamer Creamery Co.*, 246 F.2d 8 (5th Cir. 1957).) Plaintiff also argues that Fifth Circuit case law applying the NLRA protections to a "job applicant who is discriminately denied employment in violation of the NLRA" should be applied in the FLSA context. (Opp. at 11 (citing *NLRB v. George D. Auchter Co.*, 209 F.2d 273, 277 (5th Cir. 1954).)

As Defendant argues, the analogy to NLRB is not apt. As an initial matter, the definition of employee under the NLRA includes "any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise," 29 U.S.C. § 152(3), rather than the more narrow, "an individual employed by an employer" used in the FLSA. 29 U.S.C. § 203. This definition contemplates a wider sweep of individuals then is included in the FLSA's definition, as it specifically states that an employment relationship need not exist with a particular employer. Here, while the Plaintiff was never hired to work for SAIC, the statute requires that the "employee" be "permitted to work" by the specific "employer." See *Id.*

Finally, Plaintiff argues that a decision that refuses to include job applicants under the definition of "employee" would be contrary to the public policy purpose of the FLSA as it would have a chilling effect on individuals from bringing FLSA

13

actions for fear of losing future employment opportunities. Plaintiff does not offer any case law where any court ruled on this basis. As stated above, Congress could have determined that the FLSA's anti-retaliation provision could apply to "any person" rather than "any employee," however, Congress has not made that policy determination and this Court will not do so, absent Congressional intent.

## IV. Conclusion

For the reasons stated above, this Court will grant Defendant's Motion to Dismiss. An appropriate Order will issue.

|  |  |
|---|---|
| April 2, 2010<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |